UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRADLEY N. JOHNSON,<br>    Plaintiff,<br><br>  v.<br><br>CITY OF REXBURG,<br>    Defendant. | Case No. 4:11-cv-00390-REB<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. 13) and Motion to Strike (Dkt. 20). Having considered the briefing and counsels' oral arguments, and otherwise being fully advised, this motion for summary judgment is denied, for the reasons explained below.

## BACKGROUND

Plaintiff Bradley Johnson worked for the City of Rexburg from April 14, 2004 until the City terminated his plumbing inspector job on June 15, 2011. Compl., ¶¶ 8, 10 (Dkt. 1); Johnson Aff., ¶¶ 1, 5 (Dkt. 16). During his time working for the City, Johnson was injured on the job. Def.'s Mem., p. 4 (Dkt. 13-1). Johnson alleges that the resulting neck fusion surgeries affected major life activities and that he qualifies as an individual

**MEMORANDUM DECISION AND ORDER - 1**

with a disability under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12111(8) & 12112(a). Compl., ¶ 6 (Dkt. 1).

On May 9, 2011, the City notified Johnson that it was eliminating his position on June 15, 2012 due to budget constraints. Def.'s St. Mat. Facts, ¶ 23(Dkt. 13-2). Johnson requested another disability accommodation shortly thereafter, on May 17, 2011. Compl., ¶ 10 (Dkt. 1). Johnson alleges that the City terminated him because of his disability, in violation of the ADA.[1] *Id.* ¶ 14. He also alleges that the City did not eliminate other similar positions in his department but instead helped the individuals in those positions do work for other departments so that they could remain employed.

The City "does not dispute that Plaintiff was qualified for his job and that he suffered an on-the-job injury that rendered him disabled as that term is defined under the ADA." Def.'s Mem., p. 3 (Dkt. 13-1). The City notes that it provided continuing accommodations for Johnson's disability from the time of the accident, October 1, 2009, until Johnson's position was eliminated. Reply, p. 2 (Dkt. 21). However, the City disputes whether Johnson has come forward with sufficient evidence that the City's decision to eliminate his position was "because of" Johnson's disability. The City filed a summary judgment motion, arguing that it did not terminate Johnson, but rather eliminated his position due to a "budget driven" reduction in force. Def.'s Mem., p. 3

---

[1] Although Johnson's Complaint mentions that the City "refused to provide reasonable accommodation to Johnson on May 25, 2011," Compl. ¶ 11, Johnson's summary judgment brief does not mention that issue and it does not appear that he intends to pursue a reasonable accommodation claim. *See also* Hall Aff., Ex. A (Dkt. 21-2).

**MEMORANDUM DECISION AND ORDER - 2**

(Dkt. 13-1). The City seeks summary judgment in its favor.

## DISCUSSION

**1.    Motion to Strike**

As a preliminary matter, the City requested that the Court strike paragraph six of Jeff Hackworth's Affidavit as hearsay, and paragraph eight of Brad Johnson's affidavit for lack of personal knowledge. Mot. to Strike (Dkt. 20). The City argued at the hearing that its Motion to Strike should be granted because Johnson did not file a written response to the motion. *See* D. Idaho L. Civ. R. 7.1(e) (failure to respond to a Motion "may be deemed to constitute a consent to" the granting of the motion). The Court will not use its discretion under the Local Rules to deem that Johnson consented to the granting of the motion to strike because it appears that his counsel intended to argue the issue at the hearing on the motion for summary judgment, both parties had the opportunity to present arguments on the issue at the hearing, and the Court prefers to rule on the merits of issues when possible.

**A.    Hackworth Affidavit**

Jeff Hackworth, one of the individuals who covered plumbing inspections jobs for the City when Johnson was out on leave, averred that:

> In late April or early May 2011 Valea Quigg asked me if I would be interested in applying for the plumbing inspector position. I asked why there would be an opening when Brad Johnson was the plumbing inspector. She said some City employees were suspicious of Brad Johnson's neck injury and thought he was taking advantage of the situation by collecting benefits without working.

**MEMORANDUM DECISION AND ORDER - 3**

Hackworth Aff., ¶ 6 (Dkt. 17). The City objects to the statements as hearsay.

A statement otherwise hearsay in nature, is excepted from the general rule if not offered "to prove the truth of the matter asserted in the statement." The City contends that this evidence is offered to prove that other employees really were suspicious of Johnson's neck injury and thought he was taking advantage. The Court is persuaded that such evidence can properly be offered for another purpose, here, that the City may have had other motivations in eliminating Johnson's position and by not offering to transfer Johnson to a different position in City employment. *See* Fed. R. Evid. 801(c).

**B.     Johnson Affidavit**

Paragraph eight of Johnson's affidavit states that he did not apply for the skilled laborer/plumber position in the Water Department because it required that the person employed be able to lift 50 pounds regularly throughout the workday. (Dkt. 16, p. 2). He also states that, in his opinion, that based upon his "experience, training, and knowledge of the essential functions of the position in the water department" the 50 pound lifting requirement is "an artificial and unnecessary requirement." The City asks that the Court strike this paragraph because there is no evidence in the record that Johnson has personal knowledge of the Water Department position duties. (Dkt. 20, p. 2).

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." However, "[e]vidence to prove personal knowledge may

**MEMORANDUM DECISION AND ORDER - 4**

consist of the witness's own testimony." *Id.* Here, Johnson bases his testimony on his "knowledge of the essential functions of the position in the water department." (Dkt. 16, ¶ 8). Johnson worked for the City and has experience as a laborer and plumber and has relevant experience. The position included plumbing inspector duties, duties Johnson performed for the City. The foundation is not substantial, and certainly reasonably subject to cross-examination. But, in this context, the Court will not strike the paragraph. Even so, the Court did not rely on this part of Johnson's affidavit in ruling on the summary judgment motion.

2.   **Motion for Summary Judgment**

   A.   **Legal Standard - Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Group ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, at 1076. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

**MEMORANDUM DECISION AND ORDER - 6**

### B.     Legal Standard - ADA Employment Discrimination Claim

To establish a prima facie case of discrimination under the ADA, Johnson must show that he: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of his disability. *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). The City "does not dispute that Plaintiff was qualified for his job and that he suffered an on-the-job injury that rendered him disabled as that term is defined under the ADA." Def.'s Mem., p. 3 (Dkt. 13-1). Accordingly, summary judgment hinges on whether there is a genuine dispute as to whether Johnson suffered an adverse employment action "because of" his disability.[2]

In *McDonnell Douglas Corp.*, the Supreme Court held that the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of improper discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. Should defendant carry this burden of production, the burden of proof shifts back to the plaintiff to demonstrate that defendant's asserted reason is pretextual. *Id.* at 804. *See also St.*

---

[2] The Ninth Circuit has ruled that an ADA claimant must only prove that discrimination based on the plaintiff's disability was a "motivating factor" in the employer's decision to take adverse action and that the "because of" language contained in the ADA does not affect this causal standard. *Head v. Glacier Northwest, Inc.*, 1063–66 (9th Cir. 2005). *Head* held "that the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation–a motivating factor standard." *Head*, 413 F.3d at 1065.

**MEMORANDUM DECISION AND ORDER - 7**

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253 (1981).

Thus, a plaintiff seeking to defeat summary judgment must establish a prima facie case and, if defendant presents a legitimate, nondiscriminatory reason for its action, plaintiff must raise triable issues of fact as to whether the articulated reason is pretextual. *Sischo–Nownejad v. Merced Community College District*, 934 F.2d 1104, 1110 (9th Cir. 1991); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917–918 (9th Cir. 1997) ("[t]o . . . survive summary judgment, [plaintiff] must produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for [plaintiff's] discharge was false, or (b) that the true reason for his discharge was a discriminatory one").

### C. Johnson's Has Raised Triable Issues of Fact on Pretext

As discussed above, the only element of Johnson's prima facie ADA claim now in dispute is whether Johnson suffered an adverse employment action because of his disability. The City argues that it has established a legitimate, non-discriminatory reason for eliminating Johnson's position. It points to the economic downturn—that resulted in fewer City building permit applications and lower permit fee revenue—as the reason it eliminated the plumbing inspector position. Def.'s Mem., p. 3 (Dkt. 13-1). *See* Zollinger Depo., p. 65-68 (Hall Aff., Ex. B, Dkt. 13-3). Johnson does not challenge the fact of the budgetary shortfall, but argues that it is a pretextual justification for his dismissal by

**MEMORANDUM DECISION AND ORDER - 8**

elimination of his position when the City transferred other employees to different departments to avoid having to terminate their employment.[3]

The Court is satisfied on this record that the City has demonstrated a legitimate, non-discriminatory reason for eliminating Johnson's position. Hence, the burden of proof shifts back to Johnson to demonstrate that the City's asserted reason is pretextual. *McDonnell Douglas*, 411 U.S. at 804. *See also Snead*, 237 F.3d at 1076 (plaintiff "bears the burden at trial of showing that [defendant's] reason for . . . termination was pretextual"); *Smith v. Barton*, 914 F.2d 1330, 1340 (9th Cir. 1990) (after the employer offers a legitimate, nondiscriminatory reason for the discharge, and that reason disclaims any reliance on the disability, the burden shifts to the employee to demonstrate that the articulated reason is a pretext for disability discrimination). In considering these issues, it

---

[3] Both parties rely on the Ninth Circuit Court of Appeals' decision in *Snead v. Metropolitan Property & Casualty Insurance Company*, to support their respective positions on certain issues. 237 F.3d 1080 (9th Cir. 2001). In *Snead* the court found that the plaintiff "provided sufficient evidence to support an inference of discrimination" and met her burden on her prima facie case, but "that evidence [was] not sufficient to raise a genuine issue of material fact regarding the truth of [the employer's] proffered nondiscriminatory reasons or that a discriminatory reason more likely motivated [the employer] to eliminate [plaintiff's] position. *Id.* at 1094. In both the *Snead* case and the instant case other positions were eliminated around the same time as the plaintiffs' positions. However, in this case, unlike in *Snead*, other employees were assisted in finding work in other City departments.

Johnson cited the *Snead* case to support his assertion that he had met his prima facie case because of the timing of his termination. *See* Pl.'s Mem., p. 3 (Dkt. 19). The timing of the position elimination here is not as short a time as that in *Snead*, although Johnson did have a second follow-up medical procedure in March-April 2011, closer in time to the May 2011 notification that his position would be eliminated. *See* Reply, p. 4 (Dkt. 21). However, other facts in the record support the prima facie showing required for Johnson to go forward past the summary judgment stage.

**MEMORANDUM DECISION AND ORDER - 9**

is helpful to remember that "[m]aking a prima facie showing of employment discrimination is not an onerous burden." *Snead*, 237 F.3d at 1091-92 (citing *Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.") (citation and internal quotation marks omitted)).

The City maintains that a budgetary shortfall within its Building Department was the sole motivation for eliminating Johnson's position. Def.'s Mem., p. 4 (Dkt. 13-1). The City points to Richard Horner's testimony about the City's budget shortfall, and Val Christensen's testimony that the Building Department now has half the employees it did at its apex. Def.'s Mem., p. 6 (Dkt. 13-1); *see* Horner Depo., p. 13-24 (Hall Aff., Ex. C, Dkt. 13-3); Christensen Aff. (Dkt. 13-4). The City also notes that the plumbers it hired to cover Johnson's building inspections while he was out on disability were able to complete the inspections in about 10 hours per week, so a full-time inspector was no longer necessary. Def.'s Mem., pp. 6-7 (Dkt. 13-1). Additionally, Don Allen—the individual hired to help with plumbing inspections through a Water Department position advertised after Johnson was notified that his position would be eliminated but before his City employment ended—was able to complete all of the City's plumbing inspections using just about four hours of his 40-hour work week. *Id.* at p. 7.[4] The City also notes that it

---

[4] *See also* Christensen Depo., p. 82 (Hall Aff., Ex. A, Dkt. 13-3); Allen Depo., (Hall Aff., Ex. D, Dkt. 13-3). Allen's Water Department position is one that Johnson

**MEMORANDUM DECISION AND ORDER - 10**

eliminated the City Planner position and did not replace an employee in another position when that employee did not return to work after her pregnancy. Def.'s Mem., p. 4 (Dkt. 13-1); *see also* Horner Depo., p. 15 (Hall Aff., Ex. C, Dkt. 13-3).

Johnson responds that he has presented evidence of the City's discrimination because the City did nothing to try to retain him as an employee when it eliminated his position.[5] Resp., p. 1 (Dkt. 19). Yet, Johnson argues, in contrast to how he was treated, the City "informally arranged for two less experienced, less qualified but non-disabled employees to work for other City departments without requiring them to apply for those positions." No attempt was made, according to Johnson, to find a similar arrangement for him.[6] *Id.*, pp. 1-2. *See also* Christensen Depo., pp. 56-58 (Holman Aff., Ex. A, Dkt. 18-

---

argues his supervisors in the Building Department should have attempted to move him to when Johnson's position was eliminated.

[5] The Ninth Circuit Court of Appeals has held "that the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation–a motivating factor standard." *Head v. Glacier Northwest, Inc.*, 413 F.3d at 1065 (9th Cir. 2005).

[6] The City suggests that this argument amounts to a separate disparate treatment claim that needed to be pleaded as such in the Complaint. Reply (Dkt 21). However, Johnson's argument also can be interpreted as an attempt to show that circumstantial evidence supports his claim that he was terminated because of his disability when others were treated differently. This is how the Court views the argument and supporting evidence. *See Chuang v. University of California Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("We have stated that a plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer"); *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (stating that plaintiff "must produce evidence of facts that either show a discriminatory motive or show that the [employer's] explanation for his rejection is not credible"). Information about how other employers

**MEMORANDUM DECISION AND ORDER - 11**

1). Although Johnson's statements indicate that the City did not seek to make a similar arrangement for him, the City argues that Johnson "had constructive knowledge [that] two other positions" in the Building Department were "restructured resulting in two inspectors being reassigned to non-inspector positions." Def.'s Mem., p. 4 (Dkt. 13-1). Additionally, Stephen Zollinger from the Building Department testified that "[a]ll inspectors were given an opportunity to start making themselves available to other departments to try and offset the deficit" two years before Johnson being notified that his position was facing elimination. Zollinger Dep. Trans., pp. 101-104 (Dkt. 18-2). In sum, the City asserts that "[t]here is no evidence" Johnson was treated any differently than all other City employees. Def.'s Mem., p. 9 (Dkt. 13-1).

In response, Johnson points out that the two other non-disabled employees were moved to other City departments *without having to apply for the positions* into which they transferred, and that he was not informed of a position that opened up in the Water Department[7] prior to his termination even though that position included plumbing inspector duties. Resp., p. 2 (Dkt. 19); Pl.'s St. Facts, p. 3 (Dkt. 15). The crux then is

---

were treated during the downsizing of the Building Department is relevant to whether the City's actions were "internally inconsistent" or the City's explanation for the termination "is not credible." *See id.* To be clear though, because Johnson has not pleaded a disparate treatment cause of action, the Court will not analyze whether the evidence submitted supports such a claim.

[7] *See* Christensen Depo., pp. 68 (Holman Aff., Ex. A, Dkt. 18-1) (describing position); *See also* Holman Aff., Ex. B, Dkt. 18-1 (official position description).

**MEMORANDUM DECISION AND ORDER - 12**

whether helping arrange for other employees to do work for other departments, but not doing so with Johnson, is enough to go forward on a discrimination claim.

Brett Stoddard and Ted Dye were the two co-workers of Johnson's in the Building Department who remained in the Building Department but did work for other departments for which the Building Department was reimbursed. Resp., p. 6 (Dkt. 19); *see also* Christensen Depo., p. 36 (Hall Aff., Ex. A, Dkt. 13-3). Apparently they started doing work for other departments around 2009 when the City's revenue and budget problems started, and this allowed them to retain their jobs with the City.

Around the same time that Johnson was told his position would be eliminated, the Water Department advertised a skilled laborer position. That position was advertised on June 10, 2011 and included plumbing inspector duties in the job description. Zollinger Dep., p. 106 (Dkt. 18-2). In its briefing the City described this position as "a dual capacity Water Department laborer/plumber" to "cover the Building Department plumbing inspections." Def.'s Mem., p. 10 (Dkt. 13-1). Steve Zollinger testified that although he could have spoken to the Water Department Director to see whether Johnson could be placed in that department, it did not cross his mind to do so. (Dkt. 15, ¶ 19). Zollinger also noted that he thought the Water Department position was not one that would interest Johnson. *See* Zollinger Dep., pp. 103 (Hall Aff., Ex. B, Dkt. 13-3) (Zollinger did not suggest Johnson to the Water Department supervisor for the open position because he did not believe a person in an inspector position would be interested in a laborer position).

**MEMORANDUM DECISION AND ORDER - 13**

There is conflicting testimony on this issue in the record. The City maintains that Val Christensen and Stephen Zollinger informed Johnson of the opening in the Water Department on May 9, 2011 at the same time they informed him his position would be eliminated[8]; Johnson avers that he learned of the position from another individual, *see* Johnson Aff. Additionally, Valea Quigg mentioned the Water Department position to a plumber who helped cover Johnson's inspections when Johnson was out on disability leave. Her actions in doing so can infer that the City did not plan to offer to the position to Johnson.

These statements in the record undermine the City's position that "there is no evidence in the record that [Johnson] was treated any differently than all other [City] employees." Def.'s Mem., p. 9 (Dkt. 13-1). Although two other positions in the Department were eliminated, one was eliminated when a worker decided to not return from maternity leave, and the City assisted two other employees—with less experience

---

[8] *See* Def.'s Mem., p. 4 (Dkt. 13-1); Zollinger Depo., p. 102 (Hall Aff., Ex. B, Dkt. 13-3) (Zollinger testifies that he mentioned open positions in the Water Department to Johnson at the meeting when he informed Johnson his position was being eliminated); Christensen Depo., p.71 (Holman Aff., Ex. A, Dkt. 18-1). The City reports that "Plaintiff was asked whether he was interested in performing general plumbing labor if it became available in the City and declined to accept." Def.'s Mem., p. 4 (Dkt. 13-1). Val Christensen stated: "We told [Johnson] when we laid him off that . . . the plumbing inspections were going to be handled by the water department because we were moving them over into that . . . department" and "we told him . . . he could apply for it." Hall Aff., Ex. A, Christensen Dep. (Dkt. 18-1). Stephen Zollinger also testified that he mentioned there were some positions opening up in the Water Department. Zollinger Dep. Tr., p. 102 (Dkt. 18-2).

**MEMORANDUM DECISION AND ORDER - 14**

and fewer years of service who worked in inspector positions similar to plaintiff's position—in retaining City employment by doing work for other departments.

Additionally, other City departments were hiring. The Water Department posted a job that included plumber inspection duties shortly after Johnson was notified that the City was eliminating his position as a plumbing inspector for the Building Department. There are disputes of fact as to whether City employees informed Johnson of the Water Department position or ever offered to help him do work for other departments in order to help retain his City employment. Finally, Valea Quigg's comments to Jeff Hackworth, indicating that the City might not want Johnson to work for them because of his neck injury and time off for that disability, provide inferential support for Johnson's claim that the City's asserted reason for eliminating his position was a pretext. Johnson need only show that his disability was a motivating factor in the City's decision to eliminating his position. *Head v. Glacier Northwest, Inc.*, 413 F.3d at 1065 (9th Cir. 2005). For all these reasons, and drawing all inferences in favor of the non-movant as the Court is required to do, genuine disputes of material fact preclude summary judgment.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 13) DENIED; and

2. Defendant's Motion to Strike (Dkt. 20) is DENIED.

3. The pretrial conference set for April 9, 2013 at 10:00 a.m. and the jury trial scheduled for April 22, 2013 are hereby VACATED.

**MEMORANDUM DECISION AND ORDER - 15**

4.  On or before April 18, 2013, each counsel shall file with the Court a list of available dates for trial in June, July, August, and September of 2013. The trial will be rescheduled accordingly.



DATED: **March 29, 2013**.

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge